**IN THE SUPERIOR/▮▮▮ COURT OF** Cherokee _____ **COUNTY**

**STATE OF GEORGIA**

CATERINA BERGERON,
_____

SYLVAIN J. BERGERON, and
_____

## BRIAN A. BERGERON
_____

**PLAINTIFF**

Vs.

WELLS FARGO BANK, N.A.,
_____

c/o its registered agent: Corporation Service Company
_____

2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092, USA
_____

**DEFENDANT**

**CIVIL ACTION NUMBER** 25CVE0958 _____

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Justin T. Holcombe

Skaar & Feagle, LLP

133 Mirramont Lake Drive

Woodstock, GA 30189

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____ 5/15/2025 _____, _____.

Clerk of Superior Court/State Court

By:_____

**Deputy Clerk**

SC-1 Rev. 85

**EXHIBIT "A"**

Superior Court of Cherokee County
**E-Filed**
25CVE0958
5/15/2025 2:18 PM  DS
Patty Baker, Clerk
Civil Division

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

CATERINA BERGERON,
SYLVAIN J. BERGERON, and
BRIAN A. BERGERON,

    Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE

NO: _____
    25CVE0958

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES

COME NOW PLAINTIFFS, Caterina Bergeron, Sylvain J. Bergeron, and Brian A. Bergeron [hereinafter collectively the "Plaintiffs" or the "Bergerons"], and bring this action against Defendant, Wells Fargo Bank, N.A., for violations of the federal Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## PARTIES AND PERSONAL JURISDICTION

1.    Plaintiff Caterina Bergeron is a natural person residing within this Court's jurisdiction and venue and is authorized by law to bring this action.

1

**EXHIBIT "A"**

2. Plaintiff Sylvain J. Bergeron is a natural person residing within this Court's jurisdiction and venue and is authorized by law to bring this action.

3. Plaintiff Brian A. Bergeron is a natural person residing within this Court's jurisdiction and venue and is authorized by law to bring this action.

4. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a bank chartered under the laws of the United States with its principal office located at 101 N. Phillips Ave., Sioux Falls, South Dakota 57104.

5. Wells Fargo is registered with the Georgia's Secretary of State to do business and maintains a registered agent here.

6. Wells Fargo is subject to the jurisdiction and venue of this court.

7. Wells Fargo may be served by personal service upon its registered agent in the State of Georgia, to wit: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

**FACTS RELEVANT TO ALL CAUSES**

8. The Bergerons are a family of natural persons who reside in their home together; Caterina and Sylvain are a married couple, and Brian is their son.

2

EXHIBIT "A"

9. Wells Fargo is a national bank.

10. The events described in this complaint involve a Wells Fargo savings account jointly maintained by Caterina and Sylvain, a Wells Fargo checking account maintained by Caterina and Sylvain, a Wells Fargo checking account jointly maintained by Caterina and Brian, and a Wells Fargo credit card account maintained by Caterina solely.

11. All of the accounts referenced in Paragraph 13 above can be accessed through Wells Fargo's online web portal using Caterina's credentials.

12. Beginning May 6, 2025 and concluding May 20, 2025, third parties scammers (hereinafter "scammers") unknown to the Plaintiffs, without knowledge or authorization by any of the Plaintiffs, began a scheme to steal the Plaintiffs' money using Wells Fargo's online portal.

13. The Scammers gained access to the Plaintiffs' accounts through Wells Fargo's online web portal and began a series of unauthorized electronic fund transfers and cash advances.

14. The Scammers' scheme worked by transferring funds from Bergerons' checking and savings account into a business account for

3

SB Services as well as a cash advance from Caterina's credit card also into the business account for SB Services and Caterina Bergeron.

15. Wells Fargo offers a Direct Pay feature to its business account holders which electronically sends funds directly to the payee whose name or account information will not appear on the checking account statements.

16. Using the Direct Pay feature, on May 17, 2025 and May 20, 2025, the Scammers made two payments from the SB Services business checking account of $15,000.00 and $2,000.00, respectively, to an unknown party completing the theft of the Bergerons' funds which could no longer be tracked, accessed or found.

17. The transfers and cash advance to the business account came without any warning or notification to any of the Bergerons.

18. No one from Wells Fargo obtained authorization for the transactions or confirmed their validity.

19. None of the Bergerons authorized or otherwise gave access to their Wells Fargo online web portal to conduct the transactions nor have the Bergerons permitted any third party to have access or provided any third party with log in credentials.

4

EXHIBIT "A"

20. None of the Bergerons received any goods or services in exchange for the funds nor received any other benefit of any kind whatsoever.

21. As a result of the Scammers, the Bergerons collectively lost a total of $17,000.00.

22. Shortly after the fraudulent transactions took place, Caterina became aware of them when she received notification from Wells Fargo that one of her accounts had insufficient funds which came as a shock to her as she dutifully manages her accounts.

23. Upon discovery of the unauthorized electronic fund transfers and unauthorized cash advance, she immediately called Wells Fargo to dispute the unauthorized activity.

24. On May 22, 2024, Wells Fargo sent Caterina an Affidavit of Online Fraud form to be completed.

25. On May 28, 2024, before Caterina had even had time to complete and return the Affidavit, Wells Fargo responded by sending Caterina a letter denying her claims of fraud.

26. Undeterred, on May 30, 2024, Caterina sent the completed Affidavit back to Wells Fargo.

5

EXHIBIT "A"

27. On May 30, 2024, Wells Fargo sent Caterina another denying all claims as to all accounts stating that Wells Fargo deemed the transactions as authorized.

28. On June 10, 2024, Wells Fargo sent Caterina yet another letter denying all claims on three of the accounts again stating that Wells Fargo deemed the transactions as authorized.

29. On June 12, 2024, at Wells Fargo's insistence, she filed a police report with the Cherokee County, GA's Sheriff's Office and faxed the report to the number Wells Fargo provided to fax the report to.

30. The Bergerons remained vigilant and continued to dispute the unauthorized transactions to Wells Fargo.

31. On July 10, 2024, Wells Fargo sent Caterina a letter containing information that Wells Fargo contended showed that the transactions were authorized; however, the documents contained a series of codes and metadata unreadable to any layperson.

32. To this day, Wells Fargo has refused to refund any of the Bergerons' money or even to acknowledge that the loss was the result of a fraudulent scheme.

6

EXHIBIT "A"

33. Instead, Wells Fargo began harassing Caterina to pay her Wells Fargo credit card which would have a near $0 balance but for the $8,000.00 in unauthorized and fraudulent cash advances,.

34. Prior to the fraudulent cash advances, Caterina had always paid her Wells Fargo credit card bill on time and had no negative credit reporting concerning it.

35. Wells Fargo then began reporting to the nationwide credit reporting agencies, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") [hereinafter collectively, the "CRAs"] that her Wells Fargo credit card account was delinquent with an over $9,000.00 unpaid balance.

36. Wells Fargo furnished inaccurate information to the CRAs by reporting an over $9,000.00 unpaid and delinquent balance when that balance resulted from fraud, for which Caterina was not lawfully liable for.

37. Wells Fargo furnishing this inaccurate information caused great damage to Caterina's otherwise impeccable credit, costing her the ability to access additional needed credit.

7

EXHIBIT "A"

38. On October 31, 2024, under penalty of perjury, Caterina completed an FTC Identity Theft Report reporting that she was the victim of identity theft and the amounts that were stolen and the credit fraudulently taken from her.

39. On November 5, 2024, Caterina sent a letter to each of the CRAs via U.S. Certified Mail with return receipt, disputing the account balance and its delinquency and seeking to block the fraudulent information that resulted from identity theft, enclosing copies the Cherokee County police report and FTC Identity Theft Report.

40. As evidenced by the return receipts, Equifax received the letter on November 12, 2024, Trans Union on November 14, 2024, and Experian on November 25, 2024.

41. All 3 CRAs responded that they would send the dispute to Wells Fargo and that Caterina needed to send them proof of her identity for an identity theft block.

42. On December 16, 2024, Caterina sent each of the CRAs the identification documentation requested.

43. The CRAs notified Wells Fargo that Caterina disputed the delinquent balance as this is the standard protocol for CRAs and required of

EXHIBIT "A"

them by the FCRA; moreover, the CRAs reaffirmations and responses to Caterina's disputes stated that Wells Fargo had confirmed the reporting of the false debt.

44.    All 3 CRAs then later responded that they were reaffirming the account and the balance and refused to block the account information that resulted from identity theft.

45.    Caterina was shocked, confused, frustrated, and felt completely hopeless as she had taken all steps recommended by both federal agencies and the CRAs themselves in order to protect her identity from theft and fraudulent activity damaging her credit.

46.    The actions of Wells Fargo in allowing the family's money to be stolen and the damage to Caterina's credit has caused significant stress to the Bergerons and caused turmoil in the family.

47.    Defendant's actions have led to the Bergerons experiencing emotional distress in the form of stress, anxiety, worry, embarrassment, confusion, loss of wellbeing, hopelessness, diminution in familial relations, and loss of sleep as well as damage to Caterina's credit reputation.

9

EXHIBIT "A"

48.  The actions of Defendant were the direct and proximate cause of the harm sustained by the Bergerons.

49.  Defendant knew the transfer of funds from the deposit accounts into the business account instigated by the Scammers were "unauthorized electronic fund transfers" as defined by the EFTA, 15 U.S.C. § 1693a(12), yet refused to provisionally credit the Bergerons' accounts, did not make a good faith investigation, did not have a reasonable basis for believing their accounts were not in error, and knowingly and willfully concluded that their accounts were not in error despite the unreasonableness of such conclusion given the evidence available to it.

50.  Defendant knew that the cash advance that resulted in Caterina's account being delinquent and unpaid in the amount of $9,000.00 resulted from identity theft and fraud, was not authorized, and knowingly and willfully concluded that the account was accurate.

51.  Defendant's actions were intentional, willful, reckless, and in gross disregard for the Bergerons' rights and interests under state and federal law.

10

EXHIBIT "A"

52. The Bergerons have complied with all conditions precedent to bringing this action.

## CAUSES OF ACTION

### COUNT ONE (all Plaintiffs):

### ELECTRONIC FUNDS TRANSFER ACT

53. The Bergerons are each a "consumer" as that term is defined by the EFTA. 15 U.S.C. § 1693a(6).

54. Wells Fargo is a "financial institution" as that term is defined by the EFTA. 15 U.S.C. § 1693a(9).

55. The accounts maintained by the Bergerons with Wells Fargo were an "account" as that term is defined by the EFTA. 15 U.S.C. § 1693a(2).

56. The fraudulent online transfers which occurred in May of 2024, and drained Plaintiffs' Wells Fargo accounts were "unauthorized electronic funds transfers" as that term is defined by the EFTA. 15 U.S.C. § 1693a(12).

57. The EFTA requires that if, within 60 days of transmitting a banking statement to a consumer, a financial institution receives oral or written notification that:

11

EXHIBIT "A"

"(1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;
(2) indicates the consumer's belief that documentation, or, in the case of notification pursuant to 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and
(3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred;"

the financial institution shall do the following: 1) "investigate the alleged error," (2) determine whether an error has occurred, and 3) "report or mail the results of such investigation and determination to the consumer within ten business days."

58. The Bergerons notified Defendant within a few days of the unauthorized electronic funds transfer of the errors.

59. The notifications to Defendant of the unauthorized electronic funds transfers clearly identified Plaintiffs' name, account number, their belief that the transfers were in error as the result of fraud, and set forth their belief as to how and when the errors took place.

60. Despite timely notification of the errant unauthorized electronic funds transfers, Defendant failed to investigate the errors, falsely determined that no errors had occurred, and failed to mail the results of any investigation to the Bergerons within ten business days in violation of 15 U.S.C. § 1693f(a).

12

EXHIBIT "A"

61. A sufficiently reasonable investigation by Defendant would have inevitably found that the transactions resulted from fraud and errors had occurred; accordingly, Defendant's failure to correct the errors is in violation of 15 U.S.C. § 1693f(b).

62. Further, Defendant did not notify the Bergerons of their right to request reproductions with an explanation of findings in violation of 15 U.S.C. § 1693f(d).

63. Defendant's violations of the EFTA entitle the Bergerons to their actual damages, statutory damages, costs of this action, and reasonable attorney fees. 15 U.S.C. § 1693m(a).

64. Defendant did not make a good faith investigation of the unauthorized electronic funds transfers and did not have a reasonable basis for believing that the Bergerons' accounts were not in error; alternatively, Defendant knowingly and willfully concluded that the unauthorized electronic funds transfers were not in error which could not have reasonably been drawn from the evidence available; accordingly, the Bergerons are entitled to treble their actual damages. 15 U.S.C. § 1693f(e).

EXHIBIT "A"

## COUNT TWO (Caterina only):

## COUNT TWO: WELLS FARGO'S NEGLIGENT VIOLATIONS OF THE

## FAIR CREDIT REPORTING ACT

65. The FCRA requires a furnisher of information, such as Wells Fargo, to "conduct an investigation with respect to all the disputed information" upon receiving notice of a dispute from a credit reporting agency. The furnisher must review all relevant information provided to it by the credit reporting agency as part of the investigation. After conducting its investigation, the furnisher must inform the credit reporting agency of its results. If the furnisher finds the information is incomplete or inaccurate, or cannot be verified, it must modify, delete, or permanently block the reporting of the disputed information. 15 U.S.C. § 1681s-2(b).

66. The policies and procedures of Wells Fargo do not ensure compliance with the furnisher provision of the FCRA.

67. Wells Fargo received notice from each of the three CRA Defendants on more than one occasion that Caterina had disputed the false Debt, but failed to comply with FCRA's investigative requirements and the requirements to modify, delete, or permanently block when the

14

EXHIBIT "A"

information it furnished was incomplete or inaccurate in violation of 15 U.S.C. § 1681s-2(b).

68.     As a result of Wells Fargo's failure to comply with the furnisher provisions of the FCRA, Wells Fargo has caused Caterina's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of stress, anxiety, worry, embarrassment, confusion, loss of wellbeing, hopelessness, diminution in familial relations, and loss of sleep as well as damage to Caterina's credit reputation.

69.     Caterina seeks her actual damages in an amount to be determined by a jury pursuant to 15 U.S.C. 1681o(a)(1).

70.     Caterina seeks her costs and reasonable attorney fees pursuant to 15 U.S.C. § 1681o(a)(2).

**COUNT THREE (Caterina only): WELLS FARGO'S WILLFUL VIOLATIONS OF THE FCRA**

15

EXHIBIT "A"

71. The FCRA requires a furnisher of information, such as Wells Fargo, to "conduct an investigation with respect to all the disputed information" upon receiving notice of a dispute from a credit reporting agency. The furnisher must review all relevant information provided to it by the credit reporting agency as part of the investigation. After conducting its investigation, the furnisher must inform the credit reporting agency of its results. If the furnisher finds the information is incomplete or inaccurate, or cannot be verified, it must modify, delete, or permanently block the reporting of the disputed information. 15 U.S.C. § 1681s-2(b).

72. Wells Fargo received notice from each of the CRA Defendants on more than one occasion that Caterina had disputed the false debt and willfully failed to comply with FCRA's investigative requirements and the requirements to modify, delete, or permanently block when the information it furnished was incomplete or inaccurate in violation of 15 U.S.C. § 1681s-2(b).

73. Wells Fargo knew, or should have known, based upon clear documentation and the continued persistence of Caterina that the debt they were furnishing was false and not Caterina's debt;

16

EXHIBIT "A"

nevertheless, Wells Fargo continued to reaffirm the account after each dispute and, in turn, willfully damaged Caterina's credit and credit worthiness.

74. As a result of Wells Fargo's failure to comply, Wells Fargo has caused Caterina's credit to be defamed, drastically diminished her credit-worthiness, cost her the ability to borrow at preferred rates or at all, cost her time and money trying to resolve what never should have been her responsibility to cure to no avail, and severe emotion distress in the form of stress, anxiety, worry, embarrassment, confusion, loss of wellbeing, hopelessness, diminution in familial relations, and loss of sleep as well as damage to Caterina's credit reputation.

75. Caterina seeks damages in an amount to be determined by a jury pursuant to 15 U.S.C. 1681n(a)(1).

76. Caterina further seeks punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C § 1681n(a)(2).

77. Caterina seeks her costs and reasonable attorney fees pursuant to 15 U.S.C. § 1681n(a)(3).

EXHIBIT "A"

## JURY TRIAL DEMAND

78.    The Bergerons demand trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

79.    The Bergerons hereby demand that Wells Fargo take affirmative steps to preserve all documents, recordings, data, payment logs, emails, wire transfer logs, phone records, dialer records, electronically stored information, and other information or things that relate to the Bergerons, the allegations and events described herein, any third party associated with such, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this action.

80.    If Wells Fargo is aware of any third party who has possession, custody, or control of any such materials, the Bergerons demand that Wells Fargo request that such third party also take steps to preserve the requested materials. This demand shall not be deemed to narrow the scope of any independent document preservation duties.

18

EXHIBIT "A"

WHEREFORE, Plaintiffs respectfully pray the Court enter judgment in their favor and against Defendant Wells Fargo, as follows:

a) That the Bergerons be awarded actual damages, including without limitation, all funds stolen and not recredited to their accounts, plus general damages;

b) That the Bergerons be awarded treble and exemplary damages;

c) That the Bergerons be awarded their reasonable attorney fees and costs and expenses of litigation; and

d) That the Court grant the Bergerons any such further relief as is just and proper.

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

By:   /s/ Justin T. Holcombe
      Justin T. Holcombe
      Georgia Bar No. 552100
      jholcombe@skaarandfeagle.com
      Kris Skaar
      Georgia Bar No. 649610
      kskaar@skaarandfeagle.com
      133 Mirramont Lake Drive
      Woodstock, GA 30189
      Telephone: (770) 427-5600
      Facsimile:  (404) 601-1855

EXHIBIT "A"

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Telephone: (404) 373-1970
Facsimile:   (404) 601-1855

*Attorneys for Plaintiff*

20

**EXHIBIT "A"**